# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| Jonathan Tasini, individually and on behalf of all others similarly situated, | ) ) ) | 11 Civ. 2472 (JGK) (ECF Case) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AOL Inc., *et al.*, | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS

David E. Kendall (# DK8983)
Thomas G. Hentoff (admitted *pro hac vice*)
Jessica L. Brumley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth St. N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Defendants*

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 3

ARGUMENT .................................................................................................................... 5

I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST
ENRICHMENT ..................................................................................................... 6

    A.    The Parties' Agreement Bars the Unjust Enrichment Claim ................................. 6

    B.    The Complaint Cannot Allege that Equity and Good Conscience
Require Restitution ................................................................................................. 8

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF
NEW YORK GENERAL BUSINESS LAW § 349 ......................................... 10

    A.    The Complaint Does Not Allege Any Deceptive or Misleading
Conduct ................................................................................................................. 10

    B.    The Complaint Does Not Allege Any Consumer-Related Conduct or
Injury .................................................................................................................... 14

CONCLUSION .............................................................................................................. 16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Ades & Berg Grp. Investors*, 550 F.3d 240 (2d Cir. 2008) ................................................9, 16

*In re Am. Express Co. ERISA Litig.*, __ F. Supp. 2d ___, 2010 WL 4371434 (S.D.N.Y. Nov. 2, 2010) ......................................................................................................................3, 4, 5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ......................................................................................5

*Barth v. Firestone Tire & Rubber Co.*, 661 F. Supp. 193 (N.D. Cal. 1987) ....................................5

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573 (2d Cir. 2006) .........................................................................................................................6, 8

*Capela v. J.G. Wentworth, LLC*, 2009 WL 3128003 (E.D.N.Y. Sept. 24, 2009) .........................11

*City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146 (2d Cir. 1989) ...........................2

*Fibermark, Inc. v. Brownville Specialty. Paper Prods., Inc.*, 419 F. Supp. 2d 225 (N.D.N.Y. 2005) .....................................................................................................................10

*Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275 (S.D.N.Y. 1998) ...............6, 9

*In re Hydrogen, L.L.C.*, 431 B.R. 337 (Bankr. S.D.N.Y. 2010) ................................................5, 8

*Int'l Design Concepts, LLC v. Saks, Inc.*, 486 F. Supp. 2d 229 (S.D.N.Y. 2007) ....................5, 14

*In re IPO Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002) ..................................................................5

*In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005) ......................8

*Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998) ...........................................................5, 8, 11

*Maurizio v. Goldsmith*, 230 F.3d 518 (2d Cir. 2000) ...........................................................10, 15

*In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351 (S.D.N.Y. 2003) ...............................................16

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220 (S.D.N.Y. 2002) .............5, 14

*Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 2d 690 (S.D.N.Y. 2007) .........................................12

*In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ......................................10

*Telstar Res. Grp., Inc. v. MCI, Inc.*, 476 F. Supp. 2d 261 (S.D.N.Y. 2007) ...............................6, 8

*United States v. Parra*, 302 F. Supp. 2d 226 (S.D.N.Y. 2004), *aff'd*, 249 F. App'x 226 (2d Cir. 2007) .......................................................................................................................7

### STATE CASES

*Charles Hyman, Inc. v. Olsen Indus.*, 642 N.Y.S.2d 306 (App. Div. 1996)....................................8

*Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103 (App. Div. 2000)...................................................14

*Dillon v. U-A Columbia Cablevision*, 790 N.E.2d 1155 (N.Y. 2003) .............................................9

*Dragon Inv. Co. II LLC v. Shanahan*, 854 N.Y.S.2d 115 (App. Div. 2008) ................................8

*Feinberg v. Federated Dep't Stores, Inc.*, 832 N.Y.S.2d 760 (Sup. Ct. 2007).......................11, 13

*Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742 (N.Y. 2005).......................................................6

*Ludl Elec. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59 (App. Div. 2004) .......................................................................................................................13

*Med. Soc'y v. Oxford Health Plans, Inc.*, 790 N.Y.S.2d 79 (App. Div. 2005).............................14

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995) .......................................................................................................10

*Reit v. Yelp! Inc.*, 907 N.Y.S.2d 411 (Sup. Ct. 2010) ....................................................................14

*Samiento v. World Yacht, Inc.*, 883 N.E.2d 990 (N.Y. 2008).........................................................14

*Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362 (App. Div. 1994)...................10, 11, 13

*Shovak v. Long Island Commercial Bank*, 858 N.Y.S.2d 660 (App. Div. 2008) ..........................13

*Tam v. Metro. Life Ins. Co.*, 913 N.Y.S.2d 183 (App. Div. 2010)..................................................15

*Whalen v. Pfizer, Inc.*, 862 N.Y.S.2d 812, 2005 WL 2875291 (Sup. Ct. 2005).............................9

### STATUTES AND RULES

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ *passim*

N.Y. Gen. Bus. Law § 349.........................................................................................................2, 10

N.Y. Gen. Bus. Law § 399..........................................................................................................14

The Huffington Post (www.huffingtonpost.com) is a popular news and information website that offers a mix of original journalism produced by paid staffers, aggregation of web content selected from other websites, and blogs submitted by unpaid bloggers.[1]

This is a motion to dismiss a putative class action lawsuit brought by one of those bloggers, Jonathan Tasini, alleging unjust enrichment and deceptive business practices by various entities and individuals associated with The Huffington Post.  The Complaint describes Mr. Tasini as an author, politician, union leader, and successful U.S. Supreme Court litigant.  It alleges that, over the course of more than five years, Mr. Tasini, a sophisticated and accomplished professional writer and labor advocate, agreed to make 216 blog postings on The Huffington Post without seeking or receiving monetary compensation.  He did so, according to the Complaint, in exchange for the exposure that posting on The Huffington Post platform would give him, and pursuant to website terms and conditions that provided for no monetary compensation.  The Complaint does not allege that Mr. Tasini failed to receive exposure.  To the contrary, it expressly acknowledges that he did receive exposure for his submissions.

Mr. Tasini nevertheless asks this Court to jettison his long-standing agreement with The Huffington Post and rule under New York state law that a competent adult in his position cannot agree with a website to publish his submissions in exchange for non-monetary consideration.  He asks this Court to abrogate that agreement, as a matter of public policy, to combat "the broad detrimental effect of setting an artificially low price" for online content, and to reallocate at least a third of The Huffington Post's value to recognize "the collective efforts" of other bloggers who also agreed to post without receiving monetary compensation.  Complaint ("Compl.") ¶¶ 6, 115.

---

[1] A blog, a contraction of "web log," is generally defined as "an online personal journal with reflections [and] comments," *Merriam-Webster's Collegiate Dictionary* 133 (11th ed. 2008), and serves a function similar to an opinion or lifestyle column in a newspaper.

But no rule of statutory or common law, in New York or elsewhere, recognizes such a remarkable and unwarranted intrusion into the relationship between publishers and contributors. Although it is particularly inappropriate for Mr. Tasini to ask a federal court exercising its limited diversity jurisdiction to "adopt innovative theories that may distort established state law," *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir. 1989), the fact is that no court, state or federal, has the authority under New York law to rewrite private agreements and reallocate private property in the manner Mr. Tasini seeks.

The Complaint establishes that for more than five years Mr. Tasini knowingly and repeatedly submitted blog postings to The Huffington Post without seeking or receiving monetary compensation, while enjoying the benefits of his association with the website.  In light of these conceded facts, the Complaint's claims for unjust enrichment and deceptive business practices in violation of New York General Business Law § 349 ("Section 349") not only are entirely without legal merit, but are incurably so.  For two separate and independently sufficient reasons, Mr. Tasini can state no claim for unjust enrichment:  (i) his agreement with The Huffington Post bars the claim, and (ii) the facts he has pleaded demonstrate as a matter of law that equity and good conscience impose no duty of monetary payment.  For two separate and independently sufficient reasons, he can state no claim for deceptive business practices:  (i) he is unable to allege a single materially false or misleading statement made to him (or material fact wrongfully withheld from him), and (ii) the conduct he alleges is not consumer oriented, as required to state a claim under Section 349.  The Complaint should be dismissed with prejudice.[2]

---

[2] This motion to dismiss is brought on behalf of all four defendants—TheHuffingtonPost.com, Inc., AOL Inc., Arianna Huffington, and Kenneth Lerer.  For ease of reference, this memorandum refers generally to The Huffington Post, but in doing so does not concede that any of the allegations about the actions of any particular defendant are either accurate or sufficient to state a claim against that defendant.

## BACKGROUND

As alleged in the Complaint,[3] the facts are as follows.  The Huffington Post launched its www.huffingtonpost.com website on May 9, 2005, as a "for-profit enterprise" whose methods of earning revenue include selling advertising displayed to visitors to the website.  Compl. ¶¶ 21, 45–46, 81.  The website provides a mix of content that is written by paid staff members, aggregated from other websites, or submitted by unpaid bloggers like Mr. Tasini who have been selected or recruited to blog for the website.  *Id.* ¶¶ 54, 56, 58, 84.  Mr. Tasini began posting on The Huffington Post in December 2005.  *Id.* ¶¶ 17, 19.  For more than five years—beginning in December 2005 and continuing to February 2011—Mr. Tasini published 216 blog postings on The Huffington Post without seeking or receiving monetary compensation.  *Id.* ¶¶ 19, 21.

Mr. Tasini does not allege that The Huffington Post agreed to provide monetary compensation for any of his submissions.  Rather, the Complaint makes clear that the parties operated pursuant to Huffington Post's Terms and Conditions.  *See id.* ¶ 33, 70 & p.34.  Those Terms and Conditions state that "[b]y posting or submitting content," a contributor gives The Huffington Post "the right to display or publish such content" on the website, and that any claim against it shall be limited to "the amount you paid, if any, for use of our site."[4]

---

[3] As is required on a Federal Rule of Civil Procedure 12(b)(6) motion, defendants assume as true, for the purpose of this motion only, the facts alleged in the Complaint and do not otherwise admit them.

[4] Declaration of Colin Sterling ("Sterling Decl.") Ex. 2, §§ 2, 10 (setting forth the current version of the Terms and Conditions).  Materially identical terms were in place at the website's launch in 2005, and continued through 2008, when they were replaced with the version in effect today.  *See id.* ¶ 2 & Ex. 1 § 2, 8 (setting forth the original User Agreement).  Because the Complaint expressly invokes the Terms and Conditions to establish venue, and uses them as the basis for the Section 349 claim, Compl. ¶¶ 33, 70 & p.34, this Court may consider them without converting this motion to dismiss into one for summary judgment.  *See, e.g.*, *In re Am. Express Co. ERISA Litig.*, __ F. Supp. 2d ___, 2010 WL 4371434, at *2 (S.D.N.Y. Nov. 2, 2010).

The Complaint even emphasizes that The Huffington Post allegedly promised "exposure (visibility, promotion, and distribution) in lieu of monies," and "Plaintiff and the Class were only offered 'exposure,'" Compl. ¶¶ 77, 103, and admits that The Huffington Post delivered on this alleged promise:  "many [of the bloggers] *did, in fact, receive exposure*," *id.* ¶ 78 (emphasis added).  This includes Mr. Tasini, who "received numerous page views," and whose pieces were commented upon, emailed, and otherwise distributed on various social networking websites.  *Id.* ¶¶ 18–19.  Indeed, many of the 216 blog postings cited in the Complaint demonstrate on their face that Mr. Tasini took full advantage of the platform The Huffington Post gave him.  They show, for example, that Mr. Tasini used his Huffington Post blog to sell copies of books he authored, to link to his personal "micro-blogging" account at the Twitter.com website, and to announce one of his Senatorial campaigns and solicit donations for another.[5]

Nor does the Complaint suggest that there is anything atypical about The Huffington Post's arrangement with unpaid bloggers, or, for that matter, any popular news or information outlet's arrangement with unpaid contributors, such as when commentators enjoy the exposure generated by their unpaid appearances on cable news channels or public affairs programs.  As the Complaint itself recognizes, people seek the opportunity to post content on popular websites for any number of reasons other than monetary compensation.  Mr. Tasini even admits that until 2010 he made money from his own website, www.workinglife.org (misidentified in the Complaint as www.workinglife.com), while permitting members of the public to post content without payment.  *See* Compl. ¶ 15.

---

[5] *See* Sterling Decl. ¶¶ 4–7; *id.* Ex. 3 ("If you want [my] book, you can buy it on Kindle and Nook . . . .  All the links are here."); *id.* Ex. 4 ("I am announcing today that I am running for the Democratic nomination for the U.S. Senate . . . ."); *id.* Ex. 5 ("And, as a shameless plug, give us a few bucks to make sure that the war is the central issue in the 2006 elections").  These posts can be considered on a motion to dismiss because they are referred to in and are integral to the Complaint.  *See supra* note 4 (citing *In re Am. Exp. Co. ERISA Litig.*, 2010 WL 4371434, at *2).

**ARGUMENT**

Even where cases are brought as putative class actions, courts consider only the claims and characteristics of the named plaintiff in ruling on a motion to dismiss.  *See, e.g.*, *In re IPO Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002); *Barth v. Firestone Tire & Rubber Co.*, 661 F. Supp. 193, 203 (N.D. Cal. 1987) ("[C]ourts . . . generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification.").

A complaint cannot survive dismissal unless it alleges sufficient factual matter that, if accepted as true, states a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted).  "[F]acial plausibility" requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  If, after a court has accepted all well-pleaded factual allegations as true and drawn all reasonable inferences in the plaintiff's favor, a complaint still fails to state a claim on which relief may be granted, the complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See In re Am. Express Co. ERISA Litig.*, 2010 WL 4371434, at *2.  On a "motion to dismiss pursuant to Rule 12(b) (6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken."  *Id.*  Applying these standards, courts routinely dispose of deficient unjust enrichment and Section 349 claims on motions to dismiss.  *See, e.g.*, *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998) (unjust enrichment); *In re Hydrogen, L.L.C.*, 431 B.R. 337, 359–60 (Bankr. S.D.N.Y. 2010) (same); *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 225–26 (S.D.N.Y. 2002) (Section 349); *Int'l Design Concepts, LLC v. Saks, Inc.*, 486 F. Supp. 2d 229, 239 (S.D.N.Y. 2007) (same).

Mr. Tasini's unjust enrichment and Section 349 claims do not remotely state a claim upon which relief can be granted and should therefore be dismissed.  His unjust enrichment claim fails both because the parties' agreement bars his claim and for the separate and independent reason that he has failed to allege facts demonstrating that equity and good conscience require restitution.  Similarly, his Section 349 claim fails both because he alleges no deceptive or misleading conduct and because he fails to allege that The Huffington Post's purported conduct was consumer oriented.   These failures are not mere pleading defects.  Rather, they are the necessary legal consequence of the facts alleged in the Complaint.  For this reason, the Complaint's deficiencies cannot be cured by amendment, and this lawsuit should be dismissed with prejudice.

## I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

### A.      The Parties' Agreement Bars the Unjust Enrichment Claim

Unjust enrichment is "a quasi-contract claim. . . . [that] the law creates *in the absence of any agreement*" between the parties.  *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) (emphasis added).  When the parties have an agreement governing a particular subject matter, New York law precludes a claim for unjust enrichment.  *See, e.g.*, *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006); *Telstar Res. Grp., Inc. v. MCI, Inc.*, 476 F. Supp. 2d 261, 275 (S.D.N.Y. 2007).  This principle is grounded in the recognition that benefits provided pursuant to a valid contract cannot be deemed to unjustly enrich a contracting party.  *See Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 312 (S.D.N.Y. 1998).  In other words, courts will not use an unjust enrichment claim to re-write the terms of an agreement.

Here, the parties' relationship was governed by the Terms and Conditions set forth on the Huffington Post website, *see* Compl. ¶¶ 33, 70, p.34; Sterling Decl. ¶¶ 2–3 & Exs. 1–2.  Those terms make clear that there was no expectation of monetary compensation between the parties in exchange for the content provided.  Rather, the parties agreed that "[b]y posting or submitting content," Mr. Tasini gave The Huffington Post "the right to display or publish such content" on the website and that "any claim against [the Huffington Post] shall be limited to the amount [Mr. Tasini] paid, if any, for use" of the website.  *See id.*  ¶¶ 2–3 & Ex. 1, §§ 2, 10; Ex. 2, §§ 2, 8.

Mr. Tasini's repeated performance for more than five years without seeking or receiving monetary compensation further demonstrates his agreement to these terms.  *See* Compl. ¶¶ 19, 21.  The Complaint further alleges that Mr. Tasini made these submissions in exchange for the exposure that access to this popular platform gave him, and does not allege that his work failed to receive exposure.  *See id.* ¶¶ 18–19, 48, 77–78, 103.  This is more than enough to allege and confirm the existence of adequate consideration exchanged between the parties.  *See, e.g.*, *United States v. Parra*, 302 F. Supp. 2d 226, 238, 239 (S.D.N.Y. 2004) (holding that receiving the "opportunity to be heard" constituted sufficient consideration to uphold a contract, and noting that "[c]ourts reviewing contracts do not scrutinize the adequacy of consideration, but simply verify that some consideration, however minimal, has been provided" (quotation omitted)), *aff'd*, 249 F. App'x 226 (2d Cir. 2007).[6]

Accordingly, under the facts alleged in the Complaint, the existence of this agreement defeats Mr. Tasini's claim as a matter of law because the doctrine of unjust enrichment cannot be

---

[6] In *Parra*, the court addressed the enforceability of a waiver provision in a proffer agreement between the Government and a criminal defendant.  The court held that the proffer agreement was not void for lack of consideration because, even though the agreement did not expressly state the consideration received, it was clear that the defendant receive the non-monetary consideration of the opportunity to be heard.  *See id.* at 238.

used to aid a plaintiff in rewriting an agreement with which he is no longer satisfied.  *See Dragon Inv. Co. II LLC v. Shanahan*, 854 N.Y.S.2d 115, 118 (App. Div. 2008) ("A claim for unjust enrichment does not lie to relieve a party 'of the consequences of [the party's] own failure to . . . exercise caution with respect to a business transaction'" (alterations in original) (quoting *Charles Hyman, Inc. v. Olsen Indus.*, 642 N.Y.S.2d 306, 311 (App. Div. 1996))); *Telstar*, 476 F. Supp. 2d at 275 (granting Rule 12(b)(6) dismissal).

### B.    The Complaint Cannot Allege that Equity and Good Conscience Require Restitution

To state a claim for unjust enrichment, a plaintiff must establish "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel*, 448 F.3d at 586 (quotation omitted).  Mr. Tasini's unjust enrichment claim fails for the separate and independently sufficient reason that the facts as alleged in his Complaint preclude as a matter of law his ability to satisfy the third, "equity and good conscience," element of the cause of action.

"[T]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  *Dragon*, 49 A.D.3d at 405.  Courts thus will grant or affirm dismissals where a complaint demonstrates a plaintiff's inability to satisfy this element.  *See, e.g.*, *id.*; *Marcus*, 138 F.3d at 64 (affirming grant of motion to dismiss because the defendant "charged only the filed rates that it is required by law to charge" and was not "in possession of any money, which 'in equity and good conscience,' properly belongs to [plaintiffs]" (citation omitted)); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 330 (E.D.N.Y. 2005) (granting motion to dismiss because "even assuming *arguendo* that [the defendant] was enriched at plaintiffs' expense, plaintiffs have failed to demonstrate that equity and good conscience require restitution by [the defendant]"); *In*

8

*re Hydrogen, L.L.C.*, 431 B.R. at 359–60 (granting motion to dismiss because the complaint did not "adequately explain factually how 'equity and good conscience militate against' allowing [d]efendants to retain such payments" (citation omitted)); *see also In re Ades & Berg Grp. Investors*, 550 F.3d 240, 245 (2d Cir. 2008) (*per curiam*) (affirming dismissal of a constructive trust claim because "[e]quity and good conscience do not demand the creation of a constructive trust in this instance").

Here, the factual allegations of the Complaint themselves bar Mr. Tasini's unjust enrichment claim.  They demonstrate that Mr. Tasini knew full well that he was agreeing to submit blog postings in exchange for the platform provided by The Huffington Post, rather than monetary compensation.  Compl. ¶¶ 18, 48, 77–78, 103.  He did not seek or receive monetary compensation before or after his first post on December 5, 2005, or his next post on January 11, 2006.  *See id.* ¶ 19.  Yet he continued to post a total of 216 times, and he admits he received the exposure he alleges he was promised.  *See id.* ¶¶ 18–19, 78.

The Huffington Post cannot be said to have been enriched unjustly simply by proceeding according to the parties' own agreement.  *See, e.g.*, *Granite Partners*, 17 F. Supp. 2d at 312. Rather, the unjust result would be to allow Mr. Tasini to recover on his claim after knowingly accepting the benefits of the deal for more than five years.  *See, e.g.*, *Whalen v. Pfizer, Inc.*, 862 N.Y.S.2d 812, 2005 WL 2875291, at *4 (Sup. Ct. 2005) ("[I]f the plaintiff, acting with knowledge of the facts, pays for the product and continues to use the product, there is no unjust enrichment and recovery is barred" (citing *Dillon v. U-A Columbia Cablevision*, 790 N.E.2d 1155 (N.Y. 2003))).  For the additional reason that Mr. Tasini cannot satisfy the equity and good conscience requirement of an unjust enrichment claim, his claim should be dismissed.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

The Complaint's allegations also demonstrate the absence of any valid Section 349 claim for deceptive business practices.  "To make out a prima facie case under Section 349, a plaintiff must demonstrate" that (i) the defendant's acts are deceptive or misleading, (ii) the "deceptive acts were directed at consumers," (iii) "the acts are misleading in a material way," and (iv) "the plaintiff has been injured as a result."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (*per curiam*).[7]  Both because Mr. Tasini does not (and cannot) allege any deceptive or misleading conduct by The Huffington Post, material or otherwise, and also because he identifies no conduct directed at or harmful to "consumers," his claim fails.

### A.   The Complaint Does Not Allege Any Deceptive or Misleading Conduct

New York applies an objective test to determine whether a defendant's actions are materially deceptive or misleading and only prohibits those acts that are (i) "misleading in a material way" and (ii) "'likely to mislead a reasonable consumer acting reasonably under the circumstances,'" *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 612–13 (S.D.N.Y. 2005) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  "There can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed."  *Fibermark, Inc. v. Brownville Specialty. Paper Prods., Inc.*, 419 F. Supp. 2d 225, 241 (N.D.N.Y. 2005) (brackets and quotation omitted); *accord, e.g.*, *Sands v. Ticketmaster-New York, Inc.*, 616 N.Y.S.2d 362, 363 (App. Div. 1994).  A plaintiff may not merely allege that a price or policy is "unfair," "unjustified," or even "excessive"; such

---

[7] The caption for the First Cause of Action mistakenly refers to "N.Y. Gen. Oblig. Law § 349." Defendants have assumed, for the purposes of this motion, that Mr. Tasini intended to refer to New York General Business Law § 349.

allegations do not make the conduct deceptive. *Sands*, 616 N.Y.S.2d at 363; *Feinberg v. Federated Dep't Stores, Inc.*, 832 N.Y.S.2d 760, 766 (Sup. Ct. 2007).

At the most fundamental level, the Complaint's allegations make clear that The Huffington Post engaged in no deceptive or misleading acts. Notwithstanding The Huffington Post's full and complete disclosure that bloggers in Mr. Tasini's position were not offered monetary compensation to contribute, the Complaint attempts to identify four acts it contends are deceptive or misleading. Each attempt fails because the factual allegations underlying each claim do not demonstrate a materially misleading act or omission or that The Huffington Post had any duty to disclose any information Mr. Tasini now says he wished to have.

First, the Complaint alleges that The Huffington Post hid the number of page views attributed to individual blog postings (the number of times a particular page was displayed to website visitors), thereby "hiding the amount of [advertising] revenue" that Mr. Tasini's pieces allegedly provided. Compl. ¶ 102. Yet the Complaint does not allege that The Huffington Post assumed any duty to disclose specific page-view information to Mr. Tasini. In the absence of any duty to disclose, there can be no deceptive practices claim for non-disclosure under Section 349. *See Marcus*, 138 F.3d at 64 (affirming Rule 12(b)(6) dismissal because the defendant had no duty to disclose the business practices at issue); *Capela v. J.G. Wentworth, LLC*, 2009 WL 3128003, at *12 (E.D.N.Y. Sept. 24, 2009) (same).

Nor does the Complaint allege that The Huffington Post promised to provide the number of page views a post had garnered but then failed to so. Rather, the Complaint concedes that The Huffington Post made clear that such information would not be provided. This is not deceptive conduct. Nor is it material: despite knowing that he would not be provided with this information, Mr. Tasini continued to post, demonstrating that the presence or absence of such

information did not affect his behavior.  *See Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 2d 690, 699 (S.D.N.Y. 2007) (granting Rule 12(b)(6) dismissal because an alleged failure to disclose was "not misleading in a material way" under Section 349).

Second, the Complaint alleges that The Huffington Post falsely stated that information regarding Internet traffic was not available when it was, in fact, available.  Compl. ¶ 102.  But the statement on which the Complaint relies in support of this allegation, *see id.* ¶ 92, merely reinforces that The Huffington Post does not promise such information to bloggers and never pretended to.  Again, this is the opposite of a deceptive act.  And, again, Mr. Tasini's repeated decision to continue blogging knowing that such data would not be given to him confirms that the complained-of statement was not material.  *See Phillips*, 498 F. Supp. 2d at 699.

Third, the Complaint alleges that The Huffington Post failed to inform Mr. Tasini when the amount of exposure he received supposedly decreased as a result of an increase in the number of bloggers on the website.  Compl. ¶ 79.  As an initial matter, it is illogical to suggest that the mere addition of new contributors necessarily decreases the amount of exposure for any one particular contributor.  Are Stephen King or James Patterson harmed when books from other authors are added to Amazon.com?  Yet even assuming this allegation to be true, it cannot support a Section 349 claim because the Complaint does not allege that The Huffington Post made any representations regarding how, or if, any information about exposure would be provided to bloggers.  If the absence of a page-view count was important to Mr. Tasini, he could have declined to post.  He did not do so.  Instead, the Complaint establishes that after The Huffington Post disclosed that it was not providing such information, *id.* ¶ 92, Mr. Tasini continued to provide content for the website, *see id.* ¶ 19.

In reality, Mr. Tasini does not allege that he was deceived, but rather that what he received for his content was inadequate in retrospect.  Yet New York law is clear that complaints about the appropriateness of a price or defendant's policy do not state a claim under Section 349 in the absence of any identifiable deceptive or misleading conduct.  *Sands*, 616 N.Y.S.2d at 363; *Feinberg*, 832 N.Y.S.2d at 766.  No one forced Mr. Tasini to post on The Huffington Post.  He voluntarily chose to do so despite knowing that additional bloggers were posting on the website and that The Huffington Post did not provide him with the specific metric he desired to track exposure.  Because the facts were fully disclosed, this allegation cannot support a Section 349 violation.  *See Sands*, 616 N.Y.S.2d at 363; *Ludl Elec. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59, 60 (App. Div. 2004) (affirming grant of motion to dismiss); *Shovak v. Long Island Commercial Bank*, 858 N.Y.S.2d 660, 662–63 (App. Div. 2008) (same).

Fourth, the Complaint alleges that The Huffington Post engaged in deception by presenting itself as a "free forum for ideas while actually building a product with substantial value."  Compl. ¶ 102.  Yet that claim is belied by Mr. Tasini's own allegation that from its launch in May 9, 2005, The Huffington Post was an avowedly "for-profit enterprise."  *Id.* ¶ 44. Moreover, these concepts are not mutually exclusive.  A website can be both a free forum for ideas, while simultaneously generating revenue.  Indeed, the Complaint does not allege that readers were required to pay for access to The Huffington Post or that The Huffington Post was otherwise not a free forum for ideas.  Mr. Tasini was also fully aware that The Huffington Post was "in the business of selling advertising targeted toward visitors to the website."  *Id.* ¶ 46. Again, all of these facts were fully disclosed, and thus cannot support a claim under Section 349. *Sands*, 616 N.Y.S.2d at 363; *Ludl*, 775 N.Y.S.2d at 60; *Shovak*, 858 N.Y.S.2d at 662–63.

13

### B.     The Complaint Does Not Allege Any Consumer-Related Conduct or Injury

Mr. Tasini's claim fails for the separate and independent reason that the Complaint does not identify any actions directed at consumers that harmed those consumers, as required to state a claim under Section 349.  Under the statute, consumers are those "who purchase goods and services for personal, family or household use."  *Med. Soc'y v. Oxford Health Plans, Inc.*, 790 N.Y.S.2d 79, 80 (App. Div. 2005); *Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103, 106 (App. Div. 2000) ("In New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services, or property primarily for 'personal, family or household purposes'" (quoting N.Y. Gen. Bus. Law §§ 399-c, 399-p(1)(c))).

"Because section 349 is fundamentally a consumer protection statute," *Int'l Design*, 486 F. Supp. 2d at 239, it prohibits only those acts that are "consumer-oriented," *Med. Soc'y*, 790 N.Y.S.2d at 80.  Consumer-orientated acts are those that have a broader impact on consumers at large and are directed at consumers, rather than simply having an incidental effect on them.  *E.g.*, *Kaufmann*, 232 F. Supp. 2d at 225–26; *Int'l Design*, 486 F. Supp. 2d at 239.

Courts applying New York law in this regard have consistently refused to apply Section 349 in a multitude of cases where—as here—there is no suggestion that the defendant aimed any conduct at a broad universe of actual consumers.  *Samiento v. World Yacht, Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008) (affirming grant of motion to dismiss in dispute between employer and employee regarding the employer's retention of service charges); *Med. Soc'y*, 790 N.Y.S.2d at 80 (affirming grant of motion to dismiss in case dealing with acts by health insurer directed at physicians); *Reit v. Yelp! Inc.*, 907 N.Y.S.2d 411, 414–15 (Sup. Ct. 2010) (granting motion to dismiss in case dealing with manipulation of business reviews on publicly accessible website); *Kaufman*, 232 F. Supp. 2d at 226 (granting Rule 12(b)(6) motion in dispute between fabric

designer and manufacturer); *Int'l Design*, 486 F. Supp. 2d at 239 (granting Rule 12(b) motion in dispute between trademark licensee and retailers).  Courts will dismiss such claims where the "dispute is fairly characterized as private, unique to [the parties], and without direct impact on the body of consumers."  *Maurizio*, 230 F.3d at 522 (affirming dismissal of a claim where the plaintiff alleges that she was "denied credit and profits from the allegedly joint work-product").

Mr. Tasini has not pleaded any general consumer-related conduct or injury; rather, the Complaint alleges that The Huffington Post's conduct was directed at Mr. Tasini or other contributors.  In fact, it alleges that he was "personally invited" to publish on The Huffington Post.  Compl. ¶ 17.  Far from acting as a consumer, according to the Complaint, Mr. Tasini was instead a service provider who agreed—after individualized solicitation, *see id.*—to provide written material in exchange for non-monetary consideration.  Because this is a "private contractual dispute[] upon matters not affecting the consuming public," the claim is not actionable under Section 349.  *Tam v. Metro. Life Ins. Co.*, 913 N.Y.S.2d 183, 185 (App. Div. 2010) (affirming grant of motion to dismiss).

Nor does the conduct alleged have any impact, even an indirect one, on consumers.  Even assuming that members of the public at large who viewed the site were "consumers" as contemplated by the statute, the Complaint does not allege that they suffered any harm or that there was any deceptive conduct directed at them.  Nor does the Complaint allege that the public's access to the website has somehow been hindered for these same reasons or that the public paid anything—let alone a higher price—to view the website.  In the absence of any allegations that The Huffington Post directed any deceptive or misleading conduct at consumers, or injured them in any way, Mr. Tasini's claim under Section 349 fails.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.  Because there is "no indication that [the plaintiff] can amend [his] complaint[] to plead legally sufficient claims," *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 392–93 (S.D.N.Y. 2003), the dismissal should be with prejudice.  *See id.* (collecting cases holding that leave to replead should be denied where such leave would be futile); *see also In re Ades & Berg Grp. Investors*, 550 F.3d at 245 (denying leave to replead "because the flaws in [the] counterclaim cannot be cured by repleading").

May 26, 2011                                          Respectfully submitted,


                                                     /s/ David E. Kendall
                                                     David E. Kendall (# DK8983)
                                                     Thomas G. Hentoff (admitted *pro hac vice*)
                                                     Jessica L. Brumley (admitted *pro hac vice*)
                                                     WILLIAMS & CONNOLLY LLP
                                                     725 Twelfth St. N.W.
                                                     Washington, DC 20005
                                                     Telephone: (202) 434-5000
                                                     Facsimile: (202) 434-5029

                                                     *Counsel for Defendants*

16

**CERTIFICATE OF SERVICE**

I, David E. Kendall, hereby certify that on the 26th day of May, 2011, I caused the

foregoing to be served on all counsel of record via ECF.


/s/ David E. Kendall
David E. Kendall