**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| Tasini, *et al.*, | ) | 11 Civ. 2472 (JGK) |
|  | ) | (ECF Case) |
|  | ) |  |
| Plaintiffs, | ) |  |
| v. | ) |  |
|  | ) |  |
| AOL Inc., *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**RULE 12(B)(6) MOTION TO DISMISS THE FIRST**
**AMENDED CLASS ACTION COMPLAINT**

David E. Kendall (# DK8983)
Thomas G. Hentoff (admitted *pro hac vice*)
Jessica L. Brumley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth St. N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Defendants*

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................3

ARGUMENT ...........................................................................................................7

I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST
        ENRICHMENT ...........................................................................................8

        A.      Equity and Good Conscience Do Not Require Restitution.....................8

        B.      The Parties' Agreements Bar the Unjust Enrichment Claim................11

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF NEW
        YORK GENERAL BUSINESS LAW SECTION 349.....................................14

        A.      The Complaint Does Not Allege Any Material Deceptive or Misleading
                Conduct...................................................................................15

        B.      The Complaint Does Not Allege Any Consumer-Related Conduct or
                Injury.....................................................................................20

CONCLUSION.......................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*In re Ades & Berg Grp. Investors*, 550 F.3d 240 (2d Cir. 2008) (*per curiam*)........................9, 22

*In re Am. Express Co. ERISA Litig.*, 762 F. Supp. 2d 614 (S.D.N.Y. 2010) .............................5, 7

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .................................................................................7

*Barth v. Firestone Tire & Rubber Co.*, 661 F. Supp. 193 (N.D. Cal. 1987)...................................7

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
     448 F.3d 573 (2d Cir. 2006)................................................................................8, 12

*Capela v. J.G. Wentworth, LLC*, 2009 WL 3128003 (E.D.N.Y. Sept. 24, 2009)........................16

*City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146 (2d Cir. 1989) ..........................2

*Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc.*, 419 F. Supp. 2d 225
     (N.D.N.Y. 2005) ............................................................................................15

*Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275 (S.D.N.Y. 1998) ...........11, 12

*Henry v. Rehab Plus Inc.*, 404 F. Supp. 2d 435 (E.D.N.Y. 2005) ...............................................16

*Ho v. Target Constr. of NY, Corp.*, 2011 WL 1131510 (E.D.N.Y. Mar. 28, 2011) .....................10

*In re Hydrogen, LLC*, 431 B.R. 337 (Bankr. S.D.N.Y. 2010) ....................................................7, 9

*Int'l Design Concepts, LLC v. Saks, Inc.*, 486 F. Supp. 2d 229 (S.D.N.Y. 2007) ...........7, 9, 20, 21

*In re IPO Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002)................................................................7

*In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005) ......................9

*Leibowitz v. Cornell Univ.*, 584 F.3d 487 (2d Cir. 2009) .....................................................10, 11

*Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998) .........................................................7, 9, 16

*Maurizio v. Goldsmith*, 230 F.3d 518 (2d Cir. 2000) (*per curiam*) .........................................14, 21

*In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351 (S.D.N.Y. 2003)...............................................22

*Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186
     (S.D.N.Y. Aug. 11, 2006) ..................................................................................10

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220 (S.D.N.Y. 2002).......7, 20, 21

*Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 2d 690 (S.D.N.Y. 2007).........................................17

*In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ......................................15

*Telstar Res. Grp., Inc. v. MCI, Inc.*, 476 F. Supp. 2d 261 (S.D.N.Y. 2007)...........................12, 13

*United States v. Parra*, 302 F. Supp. 2d 226 (S.D.N.Y. 2004), *aff'd*, 249 F. App'x 226 (2d Cir. 2007)...................................................................................................................13

## STATE CASES

*Charles Hyman, Inc. v. Olsen Indus.*, 642 N.Y.S.2d 306 (App. Div. 1996)...................................13

*Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 516 N.E.2d 190 (N.Y. 1987)...................................12

*Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103 (App. Div. 2000)...................................................20

*Dillon v. U-A Columbia Cablevision*, 790 N.E.2d 1155 (N.Y. 2003) ...........................................11

*Dragon Inv. Co. II LLC v. Shanahan*, 854 N.Y.S.2d 115 (App. Div. 2008) .......................8, 9, 13

*Estate of Goth v. Tremble*, 873 N.Y.S.2d 364 (App. Div. 2009)...............................................10, 11

*Gershon v. Hertz Corp.*, 626 N.Y.S.2d 80 (App. Div. 1995) .......................................................16

*Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742 (N.Y. 2005).....................................................12

*Jemzura v. Jemzura*, 330 N.E.2d 414 (N.Y. 1975)........................................................................12

*Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384 (App. Div. 2002)...............................................................................................................10

*Judge Rotenberg Educ. Ctr. v. Maul*, 658 N.Y.S.2d 493 (App. Div. 1997), *aff'd*, 693 N.E.2d 200 (1998).............................................................................................10, 11

*Ludl Elec. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59 (App. Div. 2004) ...............................................................................................................................18

*Med. Soc'y v. Oxford Health Plans, Inc.*, 790 N.Y.S.2d 79 (App. Div. 2005)........................20, 21

*NYPIRG, Inc. v. Ins. Info. Inst.*, 554 N.Y.S.2d 590 (App. Div. 1990)....................................19, 20

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995) ......................................................................................................15

*Reit v. Yelp!, Inc.*, 907 N.Y.S.2d 411 (Sup. Ct. N.Y. Cnty. 2010).........................................21, 22

*Samiento v. World Yacht Inc.*, 883 N.E.2d 990 (N.Y. 2008)..................................................21, 22

*Sands v. Ticketmaster-N. Y., Inc.*, 616 N.Y.S.2d 362 (App. Div. 1994)....................................15, 18

*Schwarz v. Bear Stearns Cos.*, 698 N.Y.S.2d 855 (App. Div. 1999).............................................16

*Shovak v. Long Is. Commercial Bank*, 858 N.Y.S.2d 660 (App. Div. 2008)................................18

*Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 557 N.Y.S.2d 959 (App. Div. 1990) (*per curiam*)..........................................................................................................................................16

*Tam v. Metro. Life Ins. Co.*, 913 N.Y.S.2d 183 (App. Div. 2010)...............................................22

*Whalen v. Pfizer, Inc.*, 862 N.Y.S.2d 812, 2005 WL 2875291 (Sup. Ct. 2005)...........................11

## STATUTES AND RULES

Federal Rule of Civil Procedure 12(b)(6)...............................................................................*passim*

N.Y. Gen. Bus. Law § 349.......................................................................................................*passim*

N.Y. Gen. Bus. Law § 399..............................................................................................................20

The Huffington Post (www.huffingtonpost.com) is a popular news and information website that offers a mix of original journalism produced by paid writers and reporters, content aggregated from other websites by paid editors, and a platform for blogs submitted by unpaid bloggers.[1]

This is a motion to dismiss a putative class action lawsuit, brought by five of those bloggers, alleging unjust enrichment and deceptive business practices by various entities and individuals associated with The Huffington Post.[2]  The First Amended Class Action Complaint ("Complaint") describes these five plaintiffs as accomplished professionals, including book authors, a filmmaker, a CEO, and the lead plaintiff, Mr. Jonathan Tasini, who is described as a writer, politician, union leader, and successful U.S. Supreme Court litigant.  The Complaint concedes that over time periods ranging from several months to several years, these five self-described sophisticated and accomplished individuals repeatedly agreed to make blog posts on The Huffington Post without ever seeking monetary compensation.  They did so, according to the Complaint, in exchange for the exposure that posting on The Huffington Post platform would give them, which, again according to the Complaint, they received.

The plaintiffs nevertheless ask this Court for a massive "do over"—to jettison their long-standing agreements with The Huffington Post and rule under New York state law that competent adults cannot agree with a website to publish their submissions in exchange for non-

---

[1] A blog, a contraction of "web log," is generally defined as "an online personal journal with reflections [and] comments," *Merriam-Webster's Collegiate Dictionary* 133 (11th ed. 2009), and serves a function similar to an opinion or lifestyle column in a newspaper.

[2] This motion is brought on behalf of all four defendants—TheHuffingtonPost.com, Inc., AOL Inc., Arianna Huffington, and Kenneth Lerer.  For ease of reference, this memorandum refers generally to The Huffington Post, but in doing so does not concede that any of the allegations about the actions of any particular defendant are either accurate or sufficient to state a claim against that defendant.

monetary consideration.  They ask this Court to disregard their agreements, as a matter of public policy, to combat "the broad detrimental effect of setting an artificially low price" for online content, and to reallocate at least a third of The Huffington Post's value to recognize "the collective efforts" of other bloggers who also agreed to post for non-monetary consideration. First Amended Complaint ("FAC") ¶¶ 8, 228.

But no rule of statutory or common law, in New York or elsewhere, recognizes such a remarkable and unwarranted intrusion into the relationship between publishers and contributors. Although it is particularly inappropriate for these plaintiffs to ask a federal court exercising its limited diversity jurisdiction to "adopt innovative theories that may distort established state law," *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir. 1989), the fact is that no court, state or federal, has the authority under New York law to rewrite private agreements and reallocate private property in the manner the plaintiffs seek.

The Complaint establishes that these plaintiffs knowingly and repeatedly submitted blog posts to The Huffington Post without ever seeking monetary compensation, while enjoying the benefits of their association with the website.  In light of these conceded facts, the Complaint's claims of unjust enrichment and deceptive business practices in violation of New York General Business Law § 349 ("Section 349") not only are entirely without legal merit but are incurably so.  For two separate and independently sufficient reasons, the plaintiffs can state no claim for unjust enrichment:  (i) the facts they have pleaded demonstrate that equity and good conscience do not require restitution and (ii) their agreements with The Huffington Post bar their claims. For two separate and independently sufficient reasons, the plaintiffs also can state no claim for deceptive business practices:  (i) they are unable to allege a single material false or misleading statement made to them (or material fact wrongfully withheld from them), and (ii) the conduct

2

they allege is not consumer oriented, as required to state a claim under Section 349.  The

Complaint, which has been amended once already, should be dismissed with prejudice.

### BACKGROUND

As alleged in the Complaint as amended,[3] the facts are as follows.  The Huffington Post

launched its www.huffingtonpost.com website on May 9, 2005, as a "for-profit enterprise"

whose methods of earning revenue included selling advertising displayed to visitors to the

website.  FAC ¶¶ 119, 123, 179.  The website provides a mix of content that is written by paid

staff members, aggregated from other websites, or submitted by unpaid bloggers who have been

selected or recruited to blog for the website.  *Id.* ¶¶ 132, 135, 144, 182.

According to the Complaint, The Huffington Post made clear from the beginning that it

offered a platform for bloggers to express and gain exposure for their views without receiving

monetary compensation.  FAC ¶¶ 126, 157, 174, 202, 215.  There was never any confusion on

this point.  Rather, the Complaint concedes that The Huffington Post promised "exposure

(visibility, promotion, and distribution) *in lieu of monies*."  *Id.* ¶ 215 (emphasis added).  The

Complaint further acknowledges that "[i]n September 2007, [defendant] Lerer stated that

TheHuffingtonPost.com *has no plans to pay* its [blogger] content providers and stated, 'That's

not our financial model . . . we offer them visibility, promotion and distribution.'"  *Id.* ¶ 126

(emphasis added).

The terms of this arrangement were consistent with The Huffington Post's Terms and

Conditions, which stated that "[b]y posting or submitting content," a contributor gives The

Huffington Post "the right to display or publish such content" on the website, and that any claim

against it shall be limited to "the amount you paid, if any, for use of our site."  FAC ¶ 190 & Ex.

---

[3] As is required on a Rule 12(b)(6), Fed. R. Civ. P., motion, defendants assume as true, for the
purpose of this motion only, the facts alleged in the Complaint and do not otherwise admit them.

2 §§ 2, 10 (current version of the terms of service); *see also id.* ¶ 189 & Ex. 1 §§ 2, 8 (original version of the terms of service).

The Complaint alleges that the five named plaintiffs, all of whom are described as "well-respected" authors, repeatedly and voluntarily published their blog posts on The Huffington Post pursuant to this arrangement and encouraged their friends, acquaintances, and readers or listeners to read those posts:  (1) Jonathan Tasini, whom the Complaint describes as a politician, union leader, and successful U.S. Supreme Court litigant, posted 216 times over the course of more than five years, FAC ¶¶ 14–17, 23, 25–26; (2) Molly Secours, whom the Complaint describes as a filmmaker and advocate, posted 23 times over the course of more than a year, *id.* ¶¶ 31, 38, 40–41; (3) Tara Dublin, whom the Complaint describes as a professional in the entertainment business, posted 16 times over the course of seven months, *id.* ¶¶ 45, 47, 52, 54–55; (4) Billy Altman, whom the Complaint describes as a journalist, and editor, posted 22 times over the course of sixteen months, *id.* ¶¶ 78–81, 87, 89–90; and (5) Richard Laermer, whom the Complaint describes as a best-selling author, CEO, and public relations specialist, posted 115 times over the course of three years, *id.* ¶¶ 59–63, 70, 73–74.

The Complaint does not allege that the plaintiffs were promised or sought monetary compensation for their posts on The Huffington Post or for encouraging others to read their posts.  Instead, each plaintiff "received numerous page views" and their pieces were commented upon, emailed, and otherwise distributed on various social networking websites.  FAC  ¶¶ 21, 23, 36, 38, 50, 52, 68, 70, 85, 87.  The Complaint expressly acknowledges that each plaintiff received at least some exposure from his or her posts.  *Id.* ¶ 168.

Many of the blog posts cited in the Complaint demonstrate on their face that these plaintiffs took full advantage of the benefits provided by this exposure.  They show that these bloggers used their Huffington Post blog posts to, among other things:

- Sell copies of books that they authored:

    - "Read more musings in my fabulous book *2011: Trendspotting* and at *Laermer.com*."  FAC ¶ 70 (Laermer);

    - "If you want [my] book, you can buy it on Kindle and Nook . . . .  All the links are here."  *Id.* ¶ 23 (Tasini);[4]

- Promote their personal websites and other social media accounts:

    - "Molly Secours . . . can be reached at: www.mollysecours.com."  *Id.* ¶ 38 (Secours);

    - "Follow Tara Dublin on Twitter: www.twitter.com/taradublinrocks."  *Id.* ¶ 52 (Dublin);[5]

- Announce one political campaign and solicit donations for another:

    - "I am announcing today that I am running for the Democratic nomination for the U.S. Senate . . . ."  *Id.* ¶ 23 (Tasini); and

    - "And, as a shameless plug, give us a few bucks to make sure that the war is the central issue in the 2006 elections."  *Id.* (Tasini).[6]

The Complaint does not allege that The Huffington Post required exclusivity for posts submitted to the website.  The plaintiffs thus remained free to publish the same posts elsewhere, and the Complaint in fact acknowledges that "Plaintiffs also maintain their own websites which contain much of the content provided to TheHuffingtonPost.com."  FAC ¶ 169.

---

[4] *See* Declaration of Jessica L. Brumley ("Brumley Decl.") ¶¶ 2–3, 8 & Exs. 1, 6.  These posts may be considered on a motion to dismiss without converting it to a motion for summary judgment because they are specifically referenced in and integral to the Complaint.  *See, e.g.*, *In re Am. Express Co. ERISA Litig.*, 762 F. Supp. 2d 614, 618 (S.D.N.Y. 2010).

[5] *Id.* ¶¶ 6–7 & Exs. 4–5.

[6] *Id.* ¶¶ 2, 4–5 & Exs. 2–3.

The Complaint purports to take issue with what it calls an "ages-old" practice that these five plaintiffs took part in and enjoyed—commentators using someone else's platform to express their views without seeking monetary compensation.  FAC ¶ 9.  But the Complaint itself recognizes that people seek the opportunity to post content on others' websites for reasons other than monetary compensation, conceding that until 2010 plaintiff Tasini made money from his own website, www.workinglife.org, while "allow[ing]" members of the public to post content without payment.  *See id.* ¶ 18.  Nor does the Complaint dispute that such mutually beneficial arrangements long pre-date the Internet and include examples such as commentators enjoying the exposure generated by their unpaid appearances on cable news channels or on public affairs programs.

\*   \*   \*

Defendants moved to dismiss the original complaint.  In response, the sole plaintiff at the time, Mr. Tasini, chose to amend the complaint rather than defend its sufficiency.  The amended Complaint does not fundamentally alter the lawsuit's claims for unjust enrichment or violations of Section 349, other than to name four additional bloggers as plaintiffs.  It does, however, reverse course on the original complaint's earlier reliance on The Huffington Post's Terms and Conditions, by deleting the allegations that invoked the Terms and Conditions to establish venue and serve as the basis for the Section 349 claim.  *Compare* Compl. ¶ 33 & p.34 [D.I. #1], *with* FAC ¶ 102 & p.64.  The amended Complaint continues to concede, however, that the Terms and Conditions "ma[de] Plaintiffs and the Classes responsible for 'the consequences of posting or publishing' content" on The Huffington Post.  FAC ¶ 158.  And, the amended Complaint does not change the earlier allegations that bloggers repeatedly agreed to post on The Huffington Post without ever seeking monetary compensation.

## ARGUMENT

Even when cases are brought as putative class actions, courts consider only the claims of the named plaintiffs in ruling on a motion to dismiss.  *See, e.g.*, *In re IPO Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002); *Barth v. Firestone Tire & Rubber Co.*, 661 F. Supp. 193, 203 (N.D. Cal. 1987) ("[C]ourts . . . generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification.").

A complaint cannot survive dismissal unless it alleges sufficient factual matter that, if accepted as true, states a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted).  "[F]acial plausibility" requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  If, after a court has accepted all well-pleaded factual allegations as true and drawn all reasonable inferences in the plaintiff's favor, a complaint still fails to state a claim on which relief may be granted, the complaint should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.  *See In re Am. Express Co. ERISA Litig.*, 762 F. Supp. 2d at 618.  On a "motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken."  *Id.*  Applying these standards, courts routinely dispose of unsustainable unjust enrichment and Section 349 claims on motions to dismiss.  *See, e.g.*, *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998) (unjust enrichment); *In re Hydrogen, LLC*, 431 B.R. 337, 359–60 (Bankr. S.D.N.Y. 2010) (same); *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 225–26 (S.D.N.Y. 2002) (Section 349); *Int'l Design Concepts, LLC v. Saks, Inc.*, 486 F. Supp. 2d 229, 239 (S.D.N.Y. 2007) (same).

The plaintiffs' unjust enrichment and Section 349 claims are unsustainable and should be dismissed.  The unjust enrichment claim fails both because the Complaint alleges no facts demonstrating that equity and good conscience require restitution and because the parties' agreements bar the claim.  The Section 349 claim fails both because the Complaint alleges no material deceptive or misleading conduct and because it is unable to allege that The Huffington Post's purported conduct was consumer oriented.  These failures are not mere pleading defects. Rather, they are the necessary legal consequence of the facts alleged in the Complaint.  For this reason, the Complaint's deficiencies cannot be cured by further amendment, and this lawsuit should be dismissed with prejudice.

## I.     THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

### A.     Equity and Good Conscience Do Not Require Restitution

The Complaint's allegations establish that each plaintiff repeatedly made blog posts despite neither seeking nor receiving monetary compensation, while enjoying for months or years the benefits of exposure provided by The Huffington Post.  These allegations require dismissal because principles of equity cannot require restitution in such circumstances.

To state a claim for unjust enrichment, a plaintiff must establish "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quotation omitted).  "[T]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  *Dragon Inv. Co. II LLC v. Shanahan*, 854 N.Y.S.2d 115, 118 (App. Div. 2008).

The plaintiffs' inability to satisfy the third, "equity and good conscience," element is manifest.  Where, as here, the factual allegations of the Complaint themselves demonstrate a

plaintiff's inability to satisfy this element, courts will grant or affirm dismissals as a matter of law.  *See, e.g.*, *id.*; *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 330 (E.D.N.Y. 2005) (granting motion to dismiss because "even assuming *arguendo* that [the defendant] was enriched at plaintiffs' expense, plaintiffs have failed to demonstrate that equity and good conscience require restitution by [the defendant]"); *Marcus*, 138 F.3d at 64 (affirming grant of motion to dismiss because the defendant was not "in possession of any money which, 'in equity and good conscience,' properly belongs to [plaintiffs]" (citation omitted)); *In re Hydrogen, LLC*, 431 B.R. at 359–60 (granting motion to dismiss because the complaint did not "adequately explain factually how 'equity and good conscience militate against' allowing [d]efendants to retain such payments" (citation omitted)); *see also In re Ades & Berg Grp. Investors*, 550 F.3d 240, 245 (2d Cir. 2008) (*per curiam*) (affirming grant of motion to dismiss a constructive trust claim because "[e]quity and good conscience do not demand the creation of a constructive trust in this instance").

Here, the factual allegations of the Complaint demonstrate that these five plaintiffs were fully aware that they were submitting blog posts, and encouraging others to read those posts, to receive the benefits of the platform provided by The Huffington Post rather than monetary compensation, and that they continued to do so time and again with full knowledge of these facts.  FAC ¶¶ 126, 157, 174, 202, 215.  The plaintiffs did not seek or receive monetary compensation before they began posting, after their first posts, or after any of their other posts over a period of several months or years.  *See id.* ¶¶ 23, 25, 38, 40, 52, 54, 70, 73, 87, 89.  It is therefore clear from the Complaint itself that they had no reasonable expectation of monetary compensation at the time they made and promoted their submissions.

Under these circumstances, where the plaintiff does not "express[] an expectation of compensation prior to the performances of the services" or otherwise demonstrate that the defendant indicated that the plaintiff would receive compensation, the Second Circuit has affirmed entry of judgment as a matter of law because "in the absence of any proof that plaintiff had a reasonable basis for believing she would receive compensation . . . it cannot be said that principles of equity require any restitution." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009); *see also Judge Rotenberg Educ. Ctr. v. Maul*, 658 N.Y.S.2d 493, 496 (App. Div. 1997) (affirming dismissal of unjust enrichment claim because there could be "no valid claim of expectation of compensation"), *aff'd*, 693 N.E.2d 200 (1998); *Estate of Goth v. Tremble*, 873 N.Y.S.2d 364, 367–68 (App. Div. 2009) (holding that summary judgment should have been granted on unjust enrichment claim because "defendant's candid admissions that he voluntarily provided services . . . without expectation of any compensation would defeat the claim that plaintiff possesses property rightfully belonging to defendant"); *Ho v. Target Constr. of NY, Corp.*, 2011 WL 1131510, at *17 (E.D.N.Y. Mar. 28, 2011) (holding that to prevail on an unjust enrichment claim the claimant "must present evidence to indicate that he or she expected to be paid for the services (i.e., the submission of a bill for services rendered)" (quotation omitted)).[7]

---

[7] Although courts routinely assess reasonable expectation of compensation as part of the above-referenced three-element inquiry, some courts go even further and list such an expectation as an express fourth element of an unjust enrichment claim.  *See, e.g.*, *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384, 389 (App. Div. 2002) ("The criteria for recovery under a theory of unjust enrichment are: (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services" (quotation omitted)); *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at *12 (S.D.N.Y. Aug. 11, 2006) ("To recover on either [a claim for unjust enrichment or breach of implied-in-law contract], New York law requires the plaintiff to establish the following . . . (3) an expectation of compensation therefor . . . ." (quotation omitted)).  Because claims like the ones in this case are routinely dismissed under either test, the Court need not reach whether a three- or four-element test is used.

The Huffington Post cannot be said to have been enriched unjustly when these five plaintiffs never sought monetary compensation for their posts.  *See, e.g.*, *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 312 (S.D.N.Y. 1998).  To the contrary, the unjust result would be to allow these plaintiffs belatedly to seek monetary payment after they voluntarily and repeatedly—over the course of months or years—published their blog posts without ever asking for such compensation or otherwise stating a reasonable expectation that they were entitled to it.  *See, e.g.*, *Leibowitz*, 584 F.3d at 509; *Judge Rotenberg Educ. Ctr.*, 658 N.Y.S.2d at 496; *Estate of Goth*, 873 N.Y.S.2d at 367–68; *see also Whalen v. Pfizer, Inc.*, 862 N.Y.S.2d 812, 2005 WL 2875291, at *4 (Sup. Ct. 2005) ("[I]f the plaintiff, acting with knowledge of the facts, pays for the product and continues to use the product, there is no unjust enrichment and recovery is barred" (citing *Dillon v. U-A Columbia Cablevision*, 790 N.E.2d 1155 (N.Y. 2003))).  Because the plaintiffs cannot satisfy the equity and good conscience requirement of an unjust enrichment claim, their claim should be dismissed.

## B.    The Parties' Agreements Bar the Unjust Enrichment Claim

The claim for unjust enrichment also fails for the separate and independent reason that the Complaint's factual allegations establish at a minimum implied-in-fact agreements that as a matter of law bar any unjust enrichment claim:  each of the five plaintiffs agreed to post their blogs on The Huffington Post even though they were fully aware that The Huffington Post did not provide monetary compensation and they in fact did not seek monetary compensation during the months or years in which they posted.  The existence of these implied-in-fact agreements between the parties—demonstrated through the repeated conduct of the plaintiffs, consistent with the website's Terms and Conditions, and supported by adequate consideration—bars the claim for unjust enrichment.

11

An unjust enrichment claim permits a court to create what is known as an implied-in-law contract, but only "in the absence of any agreement" or "where there has been no agreement or expression of assent, by word or act, on the part of either party." *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005); *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 516 N.E.2d 190, 193 (N.Y. 1987) (quotation omitted). New York law precludes unjust enrichment claims, and thus will not create an implied-in-law contract, whenever there is already "a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact." *See, e.g.*, *Beth Israel*, 448 F.3d at 587; *Telstar Res. Grp., Inc. v. MCI, Inc.*, 476 F. Supp. 2d 261, 275 (S.D.N.Y. 2007). This principle is grounded in the recognition that benefits provided pursuant to the parties' agreement cannot be deemed to enrich unjustly a contracting party. *See Granite Partners*, 17 F. Supp. 2d at 312.

Thus, where, as here, the facts as stated by the plaintiff establish an implied-in-fact agreement arising from the conduct of the parties, the claim for unjust enrichment fails. *See Beth Israel*, 448 F.3d at 582, 587 (affirming summary judgment on unjust enrichment claim based on an implied-in-fact contract in which payments were "made and accepted without objection" at a particular rate); *see also Jemzura v. Jemzura*, 330 N.E.2d 414, 416, 419–20 (N.Y. 1975) (holding that there was an implied contract when "there was no claim or evidence that rent was ever paid by or demanded of plaintiff"). Likewise, here, each plaintiff's repeated submission of blog posts for no monetary compensation establishes an implied-in-fact contract because it demonstrates mutual assent to such an arrangement.

The parties' agreements were supported by adequate consideration. The Complaint alleges that each plaintiff made these submissions in exchange for the exposure that access to this popular platform gave him or her rather than monetary compensation. FAC ¶¶ 126, 157,

174, 202, 215.  The Complaint expressly acknowledges that each plaintiff received at least some exposure from their use of The Huffington Post platform.  *Id.* ¶ 168.  Each plaintiff "received numerous page views" and his or her pieces were commented upon, emailed, and otherwise distributed on various social networking websites.  *Id.* ¶¶ 21, 23, 36, 38, 50, 52, 68, 70, 85, 87. This is more than enough to allege and confirm the existence of adequate consideration exchanged between the parties.  *See, e.g.*, *United States v. Parra*, 302 F. Supp. 2d 226, 238, 239 (S.D.N.Y. 2004) (holding that receiving the "opportunity to be heard" constituted sufficient consideration to uphold a contract, and noting that "[c]ourts reviewing contracts do not scrutinize the adequacy of consideration, but simply verify that some consideration, however minimal, has been provided" (quotation omitted)), *aff'd*, 249 F. App'x 226 (2d Cir. 2007).[8]

Accordingly, under the facts alleged in the Complaint, the existence of these agreements, as implied through the repeated conduct of the parties over a period of several months or years, defeats the plaintiffs' claim as a matter of law because the doctrine of unjust enrichment cannot be used to aid a plaintiff in redoing an agreement with which he is no longer satisfied.  *See Dragon Inv.*, 854 N.Y.S.2d at 118 ("A claim for unjust enrichment does not lie to relieve a party 'of the consequences of [the party's] own failure to . . . exercise caution with respect to a business transaction'" (alterations in original) (quoting *Charles Hyman, Inc. v. Olsen Indus.*, 642 N.Y.S.2d 306, 311 (App. Div. 1996))); *Telstar*, 476 F. Supp. 2d at 265, 275 (granting Rule 12(b)(6) dismissal).[9]

---

[8] In *Parra*, the court addressed the enforceability of a waiver provision in a proffer agreement between the Government and a criminal defendant.  The court held that the agreement was not void for lack of consideration because, even though the agreement did not expressly state the consideration received, it was clear that the defendant received the non-monetary consideration of the opportunity to be heard.  *See id.* at 238.

[9] The website's Terms and Conditions set forth the same understanding:  the act of making submissions grants The Huffington Post the right to use contributors' posts.  *See supra* pp. 3–4.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349

The Complaint's allegations also demonstrate the absence of any valid Section 349 claim for deceptive business practices.  Under New York law, "[t]o make out a prima facie case under Section 349, a plaintiff must demonstrate" that (i) the defendant's acts are deceptive or misleading, (ii) the "deceptive acts were directed at consumers," (iii) "the acts are misleading in a material way," and (iv) "the plaintiff has been injured as a result."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (*per curiam*).

Critically, at no point does the Complaint allege that the plaintiffs were misled into believing they would be compensated monetarily; in fact, it concedes that The Huffington Post disclosed that there would not be any monetary compensation.  *See* FAC ¶¶ 126, 157, 174, 202, 215.  Instead, the Complaint relies on other conduct or statements that are neither deceptive nor material.  Both because the plaintiffs do not (and cannot) allege that this other conduct was deceptive or misleading, materially or otherwise, and also because they identify no conduct directed at or harmful to "consumers," their claim fails.

---

Attempting to deny the existence of an agreement between the parties, the Complaint alleges, implausibly, that none of the plaintiffs was aware of the Terms and Conditions.  FAC ¶ 191.  As demonstrated above, this argument is unavailing, and the claim for unjust enrichment fails in any event because the Complaint alleges facts establishing that the parties had at a minimum an implied-in-fact agreement that the plaintiffs would submit blog posts in exchange for the platform The Huffington Post offered, without monetary compensation.  Thus, although the parties' actions were consistent with the website Terms and Conditions, this Court need not reach the question of whether the Terms and Conditions constituted an express agreement between the parties.  Defendants reserve their right—should this case proceed to a later stage—to challenge the plaintiffs' assertions that they were unaware of the website's Terms and Conditions.

### A.     The Complaint Does Not Allege Any Material Deceptive or Misleading Conduct

At the most fundamental level, the Complaint's allegations make clear that The Huffington Post engaged in no deceptive or misleading acts.  Notwithstanding its full and complete disclosure that bloggers in the named plaintiffs' position were not offered monetary compensation to contribute, the Complaint attempts to identify five acts it contends are deceptive or misleading.  Each attempt fails because the factual allegations underlying each claim do not demonstrate a materially misleading act or omission or that The Huffington Post had any duty to disclose any information the plaintiffs now say they wished to have.

Section 349 prohibits only those acts that are (i) "misleading in a material way" and (ii) "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 612–13 (S.D.N.Y. 2005) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  Here, the Complaint concedes that The Huffington Post made clear to the plaintiffs that they would not receive monetary compensation for their posts.  Accordingly, "[t]here can be no section 349(a) claim" on the issue of monetary compensation because "the allegedly deceptive practice was fully disclosed."  *Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc.*, 419 F. Supp. 2d 225, 241 (N.D.N.Y. 2005) (quotation omitted); *accord, e.g.*, *Sands v. Ticketmaster-N. Y., Inc.*, 616 N.Y.S.2d 362, 363 (App. Div. 1994).

The five purportedly deceptive acts on which the Complaint instead relies all involve statements or non-disclosures unrelated to the compensation issue.  As demonstrated below, the alleged statements and non-disclosures cannot satisfy Section 349 because none of them are misleading or material.  The alleged non-disclosures cannot satisfy Section 349 for the additional reason that non-disclosure of information cannot serve as a basis for unjust enrichment where

15

there is no duty to disclose. *See Gershon v. Hertz Corp.*, 626 N.Y.S.2d 80, 80 (App. Div. 1995) (affirming grant of motion to dismiss because the defendant had no duty to disclose the business practices at issue); *Schwarz v. Bear Stearns Cos.*, 698 N.Y.S.2d 855, 855 (App. Div. 1999) (same); *Capela v. J.G. Wentworth, LLC*, 2009 WL 3128003, at *12 (E.D.N.Y. Sept. 24, 2009) (same; recommending Rule 12(b)(6) dismissal); *Marcus*, 138 F.3d at 64 (same; affirming Rule 12(b)(6) dismissal); *Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 557 N.Y.S.2d 959, 959 (App. Div. 1990) (*per curiam*) (same; summary judgment); *see also Henry v. Rehab Plus Inc.*, 404 F. Supp. 2d 435, 445 (E.D.N.Y. 2005) ("[A]n omission becomes a misrepresentation only in a situation in which it renders other statements made by a defendant misleading"). Each of the five alleged acts is addressed in turn.

First, the Complaint alleges that The Huffington Post has refused to provide the number of page visits and page views (the number of times a particular page was displayed to website visitors) attributed to individual blog posts, thereby "hiding the amount of [advertising] revenue" that these five plaintiffs' pieces allegedly provided. FAC ¶ 214. Yet the Complaint does not allege that The Huffington Post ever falsely promised to provide such information, *see id.* ¶ 204, or assumed any duty to provide it. In the absence of a deceptive statement or a duty to disclose, there can be no deceptive practices claim for non-disclosure under Section 349. *See Gershon*, 626 N.Y.S.2d at 81; *Marcus*, 138 F.3d at 64; *Capela v*, 2009 WL 3128003, at *12; *Schwarz*, 698 N.Y.S.2d at 855.

Nor is the alleged conduct material: despite knowing that they were not being given page-view information, these five plaintiffs continued to post, demonstrating that the presence or absence of such information did not affect their behavior. *See, e.g.*, FAC ¶¶ 32, 35, 38 (Secours continued to post on The Huffington Post even though she had the opportunity to post on other

websites that did provide page-view information).  Because the Complaint makes clear that this information was not material, it cannot support a claim for unjust enrichment.  *See Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 2d 690, 699 (S.D.N.Y. 2007) (granting Rule 12(b)(6) dismissal because an alleged failure to disclose was "not misleading in a material way" under Section 349 in light of other disclosures).

Second, the Complaint alleges that The Huffington Post falsely stated that page-view information was not available for all blog posts on the site when it was, in fact, available.  FAC ¶ 214.  But the statement on which the Complaint relies in support of this allegation, *see id.* ¶¶ 204–05, does not allege that The Huffington Post promised that such information would be provided to bloggers and then failed to provide it.  Instead, it acknowledges that The Huffington Post said that the information would not be made available.  This is not a deceptive act because the practice of not providing page-view information was disclosed.  And it is not a material act, demonstrated, again, by the five plaintiffs' repeated decision to continue blogging knowing that such data would not be given to them.  *See Phillips*, 498 F. Supp. 2d at 699.

Third, the Complaint alleges that The Huffington Post failed to inform the plaintiffs when the amount of exposure they received supposedly decreased as a result of an increase in the total number of bloggers contributing to the website.  FAC ¶¶ 176, 214.  As an initial matter, it is illogical and facially implausible to suggest that the mere addition of new contributors necessarily decreases the amount of exposure for any one particular contributor.  Are Stephen King or James Patterson harmed when books from other authors are added to Amazon.com?  Yet even assuming this allegation to be true, it cannot support a Section 349 claim because the Complaint does not allege that The Huffington Post ever promised to provide a specific amount of exposure to any particular blogger or to quantify that exposure.  If the inability to monitor the

17

amount of exposure was material to these plaintiffs, they could have chosen not to post on The Huffington Post.  They did not do so.  Instead, the Complaint establishes that after The Huffington Post disclosed that it was not providing such information, *id.* ¶ 204, these five plaintiffs voluntarily and knowingly continued to provide content for the website, *see id.* ¶¶ 23, 38, 52, 70, 87.

Fourth, the Complaint alleges that The Huffington Post engaged in deception by presenting itself as a "free forum . . . for ideas while actually building a product with substantial value for Defendants' sole benefit."  FAC ¶ 214.  But this assertion fails to identify any false or misleading statement because a website, a journal, or any other publication can be both a free forum for ideas while simultaneously generating revenue.  The Complaint fails to allege that The Huffington Post ever misstated or concealed its nature as a revenue-generating company.  To the contrary, the Complaint alleges that "TheHuffingtonPost.com launched on May 9, 2005 as a for-profit enterprise."  *Id.* ¶ 119. Because this fact was disclosed, it cannot support a claim under Section 349.  *Sands*, 616 N.Y.S.2d at 363; *Ludl Elec. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59, 60 (App. Div. 2004); *Shovak v. Long Is. Commercial Bank*, 858 N.Y.S.2d 660, 662–63 (App. Div. 2008).

Fifth, citing a comment about blogging that defendant Huffington reportedly made to a magazine, FAC ¶ 139 ("maintaining a blog is an enormous amount of work" and "it's very hard to maintain a blog that gets traffic"), the Complaint alleges that The Huffington Post engaged in deception by "dissuading Plaintiffs and the Classes from creating their own websites upon which Plaintiffs and the Classes could obtain exposure and revenue."  *Id.* ¶ 214.  To begin with, this comment could not have materially influenced the plaintiffs, because four of the five named plaintiffs concede that they continued to maintain their own blogs or websites, *id.* ¶¶ 18, 32, 47,

60, 169, 178, and that the plaintiffs even posted "much of the [same] content" on their websites as they published on The Huffington Post, *id.* ¶¶ 72, 169.[10]

The allegation fails to identify a misleading or deceptive act for the additional reason that Ms. Huffington's comment regarding the difficulty of blogging was nothing more than a "general expression[] of opinion about public matters," which cannot support a claim under Section 349. *NYPIRG, Inc. v. Ins. Info. Inst.*, 554 N.Y.S.2d 590, 592 (App. Div. 1990) (affirming grant of motion to dismiss in case against interest group who made allegedly false and misleading statements regarding the state of the insurance industry).

Plaintiffs' claim relies upon a public statement reportedly made by Ms. Huffington that "maintaining a blog is an enormous amount of work" and that it can be "very hard to maintain a blog that gets traffic." FAC ¶ 139. This comment, according to the article that reported it, was a response to "the way the pay discussion [regarding compensation of bloggers] has been framed." In explaining her view, Ms. Huffington reportedly stated, "There is something about the internet that makes people want to engage, to have their views out there. . . . Think about the bloggers as op-ed page writers. No one writes an op-ed for the *New York Times* for the money. They're writing because they want their views out there." Declaration of Jessica L. Brumley ("Brumley Decl.") ¶ 9 & Ex. 7.[11]

Such an expression of opinion on the public issue of compensation for bloggers cannot form the basis of a Section 349 claim "even where the views expressed are in support of a

---

[10] The allegation that The Huffington Post sought to dissuade individuals from starting their own blogs is further refuted by the book the Complaint cites at Paragraph 140, *The Huffington Post Complete Guide to Blogging*. As stated on the book's back cover, "The Huffington Post Complete Guide to Blogging will show you what to do to get your blog started." Brumley Decl. ¶ 10 & Ex. 8. The book may be considered on a motion to dismiss. *See supra* note 4.

[11] Again, the article may be considered on a motion to dismiss because it is quoted in and relied upon by the Complaint. *See supra* note 4.

specific profit-making corporation or industry" so long as the speaker was not attempting to sell a particular product or service.  *NYPIRG*, 554 N.Y.S.2d at 592.  "[T]o construe section[] 349 . . . otherwise would be to render [it] contrary to the First Amendment."  *Id.*

\* \* \*

The Complaint fails to demonstrate that The Huffington Post engaged in any material deceptive or misleading acts.  The claim for violation of Section 349 therefore fails.

### B. The Complaint Does Not Allege Any Consumer-Related Conduct or Injury

The Section 349 claim fails for the separate and independent reason that the Complaint does not plead any general consumer-related conduct or injury; rather, the Complaint identifies only conduct that was directed at bloggers like plaintiffs who were recruited or selected as providers of services in individual, one-on-one solicitations.

"Because section 349 is fundamentally a consumer protection statute," *Int'l Design Concepts, LLC v. Saks, Inc.*, 486 F. Supp. 2d 229, 239 (S.D.N.Y. 2007), it prohibits only those acts that are "consumer-oriented," *Med. Soc'y v. Oxford Health Plans, Inc.*, 790 N.Y.S.2d 79, 80 (App. Div. 2005).  Under the statute, consumers are those "who purchase goods and services for personal, family or household use."  *Id.* (quotation omitted); *Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103, 106 (App. Div. 2000) ("In New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services, or property primarily for 'personal, family or household purposes'" (quoting N.Y. Gen. Bus. Law §§ 399-c(1)(a)–(b), 399-p(1)(c))).  Although a party need not be a consumer to pursue a Section 349 claim, the allegedly deceptive or misleading conduct must be consumer-oriented.  Consumer-orientated acts are those that have a broader impact on consumers at large and are directed at consumers, rather than simply having an incidental effect on them.  *E.g.*, *Kaufmann*, 232 F. Supp. 2d at 225–26; *Int'l Design*, 486 F. Supp. 2d at 239.

Courts applying New York law in this regard have consistently refused to apply Section 349 in a multitude of cases where—as here—there is no suggestion that the defendant directed any conduct at a broad universe of actual consumers. *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008) (affirming grant of motion to dismiss in dispute between employer and employee regarding the employer's retention of service charges); *Med. Soc'y*, 790 N.Y.S.2d at 80 (affirming grant of motion to dismiss in case dealing with acts by health insurer directed at physicians); *Reit v. Yelp!, Inc.*, 907 N.Y.S.2d 411, 414–15 (Sup. Ct. N.Y. Cnty. 2010) (granting motion to dismiss in case dealing with manipulation of business reviews on publicly accessible website); *Kaufman*, 232 F. Supp. 2d at 226 (granting Rule 12(b)(6) motion in dispute between fabric designer and manufacturer); *Int'l Design*, 486 F. Supp. 2d at 239 (granting Rule 12(b) motion in dispute between trademark licensee and retailers).  Similarly, courts will dismiss such claims where—as here—the "dispute is fairly characterized as private, unique to [the parties], and without direct impact on the body of consumers."  *Maurizio*, 230 F.3d at 522 (affirming summary judgment where the plaintiff alleged that she was "denied credit and profits from the allegedly joint work-product").

The only acts identified by the Complaint were directed at plaintiffs and other bloggers.  Yet these bloggers, according to the Complaint, were recruited "***to perform services***" for The Huffington Post, FAC ¶ 135 (emphasis added), and were not consumers.  The Complaint also repeatedly acknowledges the private and one-on-one nature in which these bloggers were selected.  *See id.*  For example, the Complaint alleges that Mr. Tasini was "personally invited" to publish on The Huffington Post, *id.* ¶ 20, and that the others were solicited directly or invited to publish after the editors had reviewed their work, *id.* ¶¶ 34, 48, 64, 83.  Although the Complaint alleges The Huffington Post found bloggers through "contests open to the public" and "any

member of the public could **apply**" to be a blogger, *id.* ¶ 216 (emphasis added), it concedes that

The Huffington Post "does not allow content from non-vetted providers," *id.* ¶ 132.  Thus, far

from acting as consumers, the plaintiffs were instead service providers who agreed—after

individualized solicitation, *see id.* ¶¶ 20, 34, 48, 64, 83, 132, 135—to provide written material in

exchange for non-monetary consideration.

Because this is a "private contractual dispute[] upon matters not affecting the consuming

public," the claim is not actionable under Section 349.  *Tam v. Metro. Life Ins. Co.*, 913

N.Y.S.2d 183, 185 (App. Div. 2010); *see also Samiento*, 883 N.E.2d at 996 (affirming dismissal

of Section 349 claim on a motion to dismiss in suit brought by employees against their employer

because there was no harm to the consumer-customer); *Reit*, 907 N.Y.S.2d at 414–15 (granting

motion to dismiss because the allegedly deceptive conduct was "business conduct, not consumer

oriented conduct").

## CONCLUSION

The plaintiffs have now had two bites at the apple, and the addition of four more bloggers

and numerous new factual allegations has failed to strengthen the claims asserted.  Because there

is "no indication that [the plaintiffs] can amend their complaint[] to plead legally sufficient

claims," *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 392–93 (S.D.N.Y. 2003), the

Complaint should be dismissed with prejudice.  *See id.* (collecting cases holding that leave to

replead should be denied where such leave would be futile); *see also In re Ades & Berg Grp.*

*Investors*, 550 F.3d at 245 (denying leave to replead "because the flaws in [the] counterclaim

cannot be cured by repleading").

June 27, 2011                                  Respectfully submitted,

                                               /s/ David E. Kendall
                                               David E. Kendall (# DK8983)
                                               Thomas G. Hentoff (admitted *pro hac vice*)

Jessica L. Brumley (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth St. N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, David E. Kendall, hereby certify that on the 27th day of June, 2011, I caused the

foregoing to be served on all counsel of record via ECF.


/s/ David E. Kendall
David E. Kendall